## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LESLIE BOWER, individually and on behalf of all those similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>GLOBAL ORANGE DEVELOPMENT, LLC d/b/a BIGGBY COFFEE, a Michigan limited liability company,<br><br>    Defendant. | Case No.: 1:24-cv-00631<br><br>**CLASS ACTION COMPLAINT** |

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, LESLIE BOWER ("Plaintiff" or "Bower") brings this Class Action Complaint against the above-named GLOBAL ORANGE DEVELOPMENT, LLC d/b/a BIGGBY COFFEE, a Michigan limited liability company, ("Biggby" or "Defendant"), and in support thereof states the following:

## INTRODUCTION

1. Plaintiff brings this action against Biggby on behalf of all consumers in the United States who, within three (3) years of the filing of this lawsuit, purchased coffee-based drinks or other beverages from Biggby that contained non-dairy milk alternatives including oat milk, almond milk, coconut milk, and lactose-free milk ("Non-Dairy Alternatives") and paid a surcharge for the Non-Dairy Alternatives,

1

2. It is medically necessary for persons like Plaintiff to avoid consuming drinks that contain milk because of her lactose intolerance. Plaintiff ordered coffee-based and other drinks at Biggby retail coffee shops in Ohio since at least 2020 to the present. In addition to Ohio, Plaintiff also purchased coffee drinks in 2023 in Okemos, Michigan.

3. When Plaintiff visited Biggby coffee shops in those states, she ordered drinks that included milk as part of the regular menu item. Due to her medical condition, Plaintiff requested to substitute milk for Non-Dairy Alternatives, specifically oat "milk," and were charged at least an extra $0.50 - $1.00 surcharge by Biggby for the substitution.

4. Throughout the class period, Biggby charged a $0.50 - $1.00 surcharge ("Surcharge") to its customers who were lactose intolerant to substitute milk for Non-Dairy Alternative products in its beverages.

5. Upon information and belief, in 2023, the average price of a Biggby coffee drink in Ohio and Nationwide was $4.95, therefore the Surcharge represented almost 20% of the averaged price beverage. Also, milk is not the only ingredient in a coffee drink at Biggby, therefore the Surcharge represents an even higher percentage proportional to the price of milk (up to 200%).

6. There is no material difference between the price of 2% regular milk and the price of some Non-Dairy Alternatives that supports levying a blanket Surcharge to substitute Non-Dairy Alternatives in Biggby's drinks.

7. Recognizing the price similarity, other coffee chains, like Tim Hortons, do not levy a Surcharge for replacing 2% regular cow's milk with Non-Dairy Alternatives.

8. Biggby' standard offering in most beverages is 2% regular cow's milk.

9. Biggby will substitute breve (half-and-half), whole milk, or fat-free skim milk for the 2% milk ingredient to its beverages at no additional charge.

10. Biggby offers several options when it comes to the content of fat in the milk but does not offer a lactose-free milk option at no additional charge.

11. Biggby will modify its regular beverage offerings to remove caffeine or make caffeine-free beverages at no additional charge for persons with a variety of conditions, including hypertension.

12. Biggby will modify its regular beverage offerings to remove sugar or use sugar-free sweeteners at no additional charge for those persons with diabetes or who need to control weight.

13. There is no expertise or additional work required of Biggby employees to substitute whole milk or fat-free milk in place of 2% regular milk, to make caffeine-free or sugar-free beverages, or to substitute Non-Dairy Alternatives such as almond, coconut, oat, or other lactose-free "milk" in place of 2% regular milk.

14. Nevertheless, Biggby charges customers with lactose intolerance an excessively high Surcharge to substitute Non-Dairy Alternatives in its drinks.

15. During the Class Period Biggby did not offer a lactose-free milk option or Non-Dairy Alternatives at no charge.

16. In this way, Defendant's conduct violates the Americans with Disabilities Act and constitutes common law Unjust Enrichment.

17. Defendant discriminates against Plaintiff and the putative class members by levying a Surcharge for its Non-Dairy Alternatives in the form of Non-Dairy Alternatives added to its coffee-based drinks and other beverages.

18. Plaintiff also seeks declaratory and injunctive relief to ensure that Defendant charges the same price to those customers with lactose intolerance for the same menu items as regular customers and that it does not add a Surcharge for Non-Dairy Alternatives such as almond, coconut, oat, or other lactose-free "milk".

## JURSIDICTION AND VENUE

19. This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed nationwide class consists of more than 100 members; (ii) at least one class member has a different citizenship from Defendant; and (iii) the claims of the proposed class exceed $5,000,000 in the aggregate.

20. The Court has personal jurisdiction over the Defendant due to the fact that it is headquartered and has its principal place of business in the State of Michigan.

21. Defendant is registered as a Michigan limited liability company in the State of Michigan.

22. Defendant is headquartered in Lansing, Michigan, which is located within the Western District of Michigan.

23. Venue is proper in the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(1).

## THE PARTIES

**A.  Plaintiff**

24. Plaintiff, Leslie Bower, is an individual residing in Hamilton, Ohio. Plaintiff has purchased items, including coffee drinks, at various Biggby Coffee locations in Hamilton and throughout the State of Ohio. Plaintiff also purchased coffee drinks at Biggby Coffee stores in Michigan in 2023. Plaintiff paid the Surcharge on coffee drinks purchased from Biggby Coffee.

25. Plaintiff Bower has lactose intolerance and is disabled.

26. When she consumes milk or dairy products in drinks, she suffers severe physical symptoms including but not limited to bloating, diarrhea, excessive gas, nausea, abdominal pain, cramping and fatigue.

27. Plaintiff's lactose intolerance significantly impacts her life activities of drinking beverages and the major bodily function of digestion.

28. Plaintiff's lactose intolerance affects her ability to engage in social events, work activities and affects the way she interacts with family.

29. Plaintiff's lactose intolerance forces her to avoid social and family activities due to severe diarrhea and abdominal pain and cramping.

30. **Defendant**

31. Defendant, Global Orange Development, LLC dba Biggby Coffee, is a Michigan limited liability company and its principal place of business is located at 2501 Coolidge Road, East Lansing, Michigan 48823.

32. Biggby is a franchisor of over 400 coffee stores in at least 12 states in the United States.

33. Biggby enters into franchise agreements with numerous entities to operate its franchises.

34. Through its franchise agreements and management structure, Biggby maintains control over the operations of its franchisees.

35. Biggby requires that its franchisees follow certain policies and procedures, specifically including with respect to the Non-Dairy Alternative Surcharge imposed on Biggby's customers.

36. Biggby operates a mobile ordering application that has established and controlled mechanisms for the charging of the Surcharge for Non-Dairy Alternatives.

37. Biggby requires that its franchisees charge the Surcharge for Non-Dairy Alternatives.

38. Biggby enters into supply agreements with suppliers of non-dairy alternatives products such as oat, almond, and coconut milk.

39. Biggby's franchisees are able to take advantage of the non-dairy alternatives supply agreements to purchase non-dairy alternatives at favorable prices.

## BACKGROUND FACTS

40. Plaintiff has been told by a doctor to avoid dairy products because of her lactose intolerance. Plaintiff must consume drinks that do not contain milk or milk derivatives.

41. Plaintiff suffers adverse health effects if they ingest milk or milk-based products, including severe stomach pain accompanied by cramps, digestive tract inflammation, bowel irregularities and severe intestinal gas.

42. Upon information and belief, Class Members may experience stomach pain, cramps, bowel irregularities, diarrhea, wheezing, vomiting, hives and significant digestive problems when they consume milk or milk derivatives.

43. Avoiding milk and milk products is the primary treatment for lactose intolerance.

44. As a result, Plaintiff must pay very careful attention to the drinks they consume and can only consume non-dairy products in drinks that contain Non-Dairy Alternatives. Plaintiff's disability limits the major life activities of drinking (and the nutritional benefits from ingesting drinks), and digestion.

45. Plaintiff has received medical treatment related to her ingesting milk and have been advised by a medical physician not to consume milk-based products.

46. Lactose intolerance is a disability that makes it difficult to digest lactose. Lactose is a type of natural sugar found in milk and dairy products.

47. When lactose moves through the large intestine without being properly digested, it can cause gas, bloating, belly pain and diarrhea. Many people who have lactose intolerance cannot eat or drink any milk or milk-based products.

48. Lactose intolerance occurs when the small intestine does not make enough of an enzyme called lactase. The body needs lactase to break down and digest lactose. A person's body may stop making lactase after a short-term illness such as an infection or as part of a lifelong chronic disease such as cystic fibrosis.

49. Because of her disability, Plaintiff has ordered Non-Dairy Alternatives at Biggby containing Non-Dairy Alternatives such as oat milk.

50. Plaintiff has been levied the Surcharge by Biggby for Non-Dairy Alternatives in her coffee drinks ordered and consumed from Defendant's stores in Ohio.

51. The Non-Dairy Alternative Surcharge has real and practical consequences for consumers suffering from lactose intolerance. A consumer will pay at least $0.50 - $1.00 more for a drink at Biggby for Non-Dairy Alternatives. Non-Dairy Alternatives, which do not contain lactose, are medically necessary for individuals with lactose intolerance and is not a choice.

52. The Surcharge applies to any drink that a customer decides to "customize" by replacing the 2% milk with a Non-Dairy Alternative.

53. Without the availability of Non-Dairy Alternatives options, consumers with lactose intolerance are deprived of the opportunity to enjoy consuming Biggby's coffee beverages and drinks with their friends, family, and business associates.

54. Upon information and belief, Biggby sells approximately 500,000 coffee-based drinks per day.

55. Various studies in the United States conclude that approximately 12-48% of the U.S. population is lactose intolerant.

56. Upon information and belief, Biggby's annual revenue in 2023 exceeded $1 billion dollars.

57. Upon information and belief, Biggby has approximately 2500 employees.

58. Biggby is one of the largest coffee chains in the United States.

59. Because of its size, and through its supply agreements, Biggby has the power to control the purchasing pricing for Non-Dairy Alternatives.

60. Upon information and belief, Biggby has earned at least $50 million dollars in the United States as a result of its discriminatory and illegal levying of the Surcharge during the Class Period.

## CLASS ALLEGATIONS

61. Plaintiff brings this action as a class pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following classes:

(A) National Class: All persons who (1) suffer from lactose intolerance, or an intolerance to milk or milk-based products; or (2) suffer from a milk allergy;

and who purchased drinks or other items from Biggby within three years prior to the filing of the Complaint and continuing to the present.

62. The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

63. Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

64. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

**Numerosity**

65. The potential members of the class are so numerous that joining all members of the class is impractical. Although the precise number of putative class members has not been determined at this time, Plaintiff are informed and believe that that the proposed classes include thousands of members.

**Predominance**

66. There are common questions of law and fact that predominate over any questions affecting only individual putative class members.

### Typicality

67. Plaintiff's claims are typical of the claims of the members of the putative class because Plaintiff ordered and consumed drinks at Defendant's stores, ordered Non-Dairy Alternatives and incurred a Surcharge for that alternative milk during the applicable class period.

68. Plaintiff and each class member sustained similar injuries arising out of Defendant's conduct in violation of law.  The injuries of each member of the class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all members of the putative class and represents a common thread of misconduct resulting in injury to all members of the class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of putative class members and are based on the same legal theory.

### Superiority of Class Action

69. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of putative class members is not practicable and questions of law and fact common to the class members predominate over any questions affecting only individual putative class members.

70. Each member of the putative class has been damaged and is entitled to recovery by reason of Defendant's illegal acts.

71. Class action treatment will allow those similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

72. Plaintiff is unaware of any difficulties that are likely to be construed in the management of this action that would preclude its maintenance as a class action.

73. The disposition of all claims of the members of the class in a class action, rather than individual actions, benefits the parties and the Court. The interests of the class members in controlling prosecution of separate claims against the Defendant is small when compared to the efficiency of a class action.

**Adequacy of Representation**

74. Plaintiff will fairly and adequately represent and protect the interests of the class. Counsel for Plaintiff and for the putative class members are experienced and competent in litigating class actions.

**CLAIMS FOR RELIEF**

**COUNT I – VIOLATION OF TITLE III OF AMERICANS WITH DISABILITIES ACT**

75. The allegations contained in Paragraphs 1 - 74 of the Complaint are incorporated by reference as if fully set out herein.

76. Plaintiff asserts this count on her own behalf and on behalf of all other similarly situated persons members of the National Class.

77. Defendant is a public accommodation under the Americans with

Disabilities Act ("ADA"), *see* 42 U.S.C. § 12181 (7)(B), and consequently Defendant is prohibited from discriminating against Plaintiff and other members of the putative class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges and advantages provided by Defendant.

78. The ADA requires that a "public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford good, services, facilities, privileges, advantages or accommodations to individuals with disabilities[.]". 28 C.F.R. § 36.302(a). *See also* 42 U.S.C. § 12182(b)(2)(A)(ii) (stating that discrimination includes failing to make reasonable modifications when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities).

79. The ADA makes it discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage or accommodation that is not equal to that afforded to other individuals[.]" 42 U.S.C. § 12182(a)(i). *See also* 42 U.S.C. § 12182(b)(i) (making it discriminatory for a public accommodation to deny disabled persons the opportunity to participate in or benefit from goods, services, privileges, advantages, or accommodations).

80. The ADA requires that a "public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are

13

necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 28 C.F.R. § 36.302(a).

81. Under the ADA, if an establishment already makes alterations or modifications, or takes special orders for its customers, it must do so for the disabled customer requests as well. *See* 28 C.F.R. § 36.307(a) & (b) ("A public accommodation shall order accessible or special goods at the request of an individual with disabilities, if, in the normal course of its operation, it makes special orders on requests for unstocked goods, and if the accessible or special goods can be obtained from a supplier with who the public accommodation customarily does business.").

82. Most importantly, the ADA provides that a "public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 36.301.

83. The ADA Amendments Act of 2008 ("ADAAA") was passed to restore the intent and protections of the Americans with Disabilities Act of 1990.

84. The ADAAA contained specific Congressional Findings that the amendments were intended to address and reject United States Supreme Court decisions that had incorrectly found in individual cases that people with a range of

14

substantially limiting impairments are not people with disabilities.

85. Specifically, the ADAAA cited to the following holdings as having been incorrectly decided: 1) *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999); and 2) *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002).

86. The clear Congressional intent of the ADAAA was to expand and broaden the disabilities that are included for protection under the ADA.

87. Section 4(a) of the ADAAA amends Section 3 of the ADA to include the following language under Section 4 Rules of Construction Regarding the Definition of Disability: (A) the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.

88. Lactose intolerance is a disability under the ADA.  The ADA defines a disability, in pertinent part, as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1).  An impairment means "[a]ny physiological disorder or condition that affects "one or more body systems," such as the neurological, digestive, or immune systems.  28 C.F.R. 36.105(b)(1)(i).  An impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."

89. Drinking beverages, including coffee drinks, is a major life activity.

90. Digestion is a major life activity and major bodily function.

91. Defendant violates the ADA because, as alleged above, it fails to make

modifications to persons with lactose intolerance but instead imposes a surcharge on this group of persons, purportedly to cover the costs of such measures, even though there is no material difference between the costs of regular milk and Non-Dairy Alternatives.

92. As a direct result of Defendant's violation of the ADA, Plaintiff and class members have suffered injury, including but not limited to the violation of their statutory rights and loss of money as a result of Defendant's illegal price discrimination. Therefore, Plaintiff and the putative class members are entitled to damages and injunctive relief.

93. Defendant's actions were willful, wanton, malicious, and intentional, and were done in willful and conscious disregard of the rights of Plaintiff and the putative class members. Defendant's actions were done with the express knowledge, consent, and ratification of Defendant's managerial employees and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at trial.

## COUNT II – UNJUST ENRICHMENT/RESTITUTION

94. The allegations contained in paragraphs 1 through 74 of the Complaint are incorporated by reference as if fully set out herein. Plaintiff asserts this count on her own behalf and on behalf of the National class, as defined above.

95. Plaintiff conferred a benefit to Defendant by allowing them to collect a surcharge in exchange for providing Plaintiff with Non-Dairy Alternatives.

96. The Defendant enriched itself at the expense of Plaintiff and the putative

class members by its illegal levying of the Surcharge for Non-Dairy Alternatives.

97.  Plaintiff and putative class members continue to suffer injuries as a result of the Defendant's illegal and discriminatory behavior. If the Defendant does not compensate the Plaintiff, it would be unjustly enriched as a result of its unlawful acts or practices.

98.  It is an equitable principle that no one should be allowed to profit from its own wrongdoing, therefore it would be inequitable for the Defendant to retain said benefit and reap unjust enrichment.

99.  Since the Defendant unjustly enriched itself at the expense of the Plaintiff and putative class members, Plaintiff requests the disgorgement of these illegally obtained monies.

100.  Due to Defendant's conduct, Plaintiff and the putative class members are entitled to damages according to proof, but in no event less than $5,000,000.00.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiff, LESLIE BOWER, respectfully requests that this Court enter judgment in her favor and in favor of those similarly situated, as follows:

1.  Certifying and maintaining this action as a class action, with the named Plaintiff as designated class representative and with her counsel appointed as class counsel;

2.  A declaration that Defendant is in violation of each of the Counts set forth above;

3. Award Plaintiff and those similarly situated statutory, compensatory, and treble damages;

4. Award Plaintiff and those similarly situated liquidated damages;

5. Order the disgorgement of illegally obtained monies;

6. Award the named Plaintiff a service award;

7. Award attorneys' fees and costs; and

8. Grant such further relief as the Court deems just and proper.

Dated: June 19, 2024                    Respectfully submitted,

s/Keith L. Gibson
Keith L. Gibson
KEITH GIBSON LAW, P.C.
IL Bar No.: 6237159
490 Pennsylvania Avenue Suite 1
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

s/Bogdan Enica
Bogdan, Enica (*Pro Hac Vice* to be filed)
KEITH GIBSON LAW, P.C.
FL Bar No.: 101934
1200 N. Federal Highway, Suite 375
Boca Raton, FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

*Counsel for Plaintiff and the Putative Class*